UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHENA CLEMONS,<br><br>    Plaintiff,<br><br>vs.<br><br>SUNBEAM PRODUCTS, INC.,<br><br>    Defendant. | **COMPLAINT FOR DAMAGES FOR PERSONAL INJURY AND PROPERTY DAMAGE**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No.:  3:12-cv-1209 WDS/SCW |

## COMPLAINT

### THE PARTIES AND JURISDICTION

1. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), as there is diversity between the Plaintiff and the Defendant, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Venue is proper in the Southern District of Illinois because the injuries to Plaintiff Kathena Clemons occurred in Pulaski County, Illinois, in the Southern District of Illinois on March 27, 2011.

2. Plaintiff Kathena Clemons, an adult, is a resident of Ullin, Illinois, located in Pulaski County, and a citizen of the State of Illinois.

3. Defendant Sunbeam Products, Inc. (hereinafter "Sunbeam") is a Delaware corporation, and maintains its corporate headquarters in the state of Florida, at the street address of 2381 Executive Center Drive, Boca Raton, Florida 33431, and as such is deemed to be a citizen of the State of Deleware, and/or a citizen of the State of Florida, and is not a citizen of the State of Illinios.

4. At all times relevant hereto, Defendant Sunbeam has done business in the State of Illinois and elsewhere as Jarden Consumer Solutions.

5. At all relevant times, Sunbeam has been licensed to do business in the State of Illinois.

1

6. At times that may be relevant hereto, Defendant Sunbeam has undergone various corporate transactions and transformations, and at various times in the past Sunbeam was known as, or was a predecessor in interest to, or was a subsidiary of, or was a division of, or an affiliate of Sunbeam Corporation, Sunbeam, Inc., Sunbeam Oster Household Products, Inc., Sunbeam-Oster Company, Inc., Sunbeam Oster, Inc., Sunbeam Home Comfort Company, Sunbeam Oster Housewares, and/or Northern Electric Company.

7. At all times relevant hereto, Defendant Sunbeam designed, manufactured, and distributed various household appliances, including electric blankets, to consumers in the State of Illinois.

## STATEMENT OF FACTS

### The Sunbeam Product

8. Defendant Sunbeam designed, manufactured, and distributed, within the state of Illinois, a consumer product generally known as a Sunbeam electric blanket.

9. Defendant Sunbeam imported from China certain components of its electric blankets, including the controls for these blankets, and the terminal blocks for these blankets, which contain certain components of the safety circuitry for this product.

10. Plaintiff Kathena Clemons was the owner or consumer of a Sunbeam electric blanket, specifically known and identified by Sunbeam as a Sunbeam positive temperature coefficient (PTC) heating element electric blanket.

11. The Sunbeam electric blanket of Plaintiff Kathena Clemons included and utilized what Sunbeam generally refers to as the Circuit 104 safety circuit.

12. Since the year 2000, Sunbeam has manufactured and distributed various sizes and styles of PTC electric blankets, throws and mattress covers that contain the Circuit 104 safety circuit.

13. The various sizes and styles of Sunbeam PTC electric blankets, throws and mattress covers that contain the Circuit 104 safety circuit are substantially similar in their electrical function and design.

14.     The various sizes and styles of Sunbeam PTC electric blankets, throws and mattress covers that contain the Circuit 104 safety circuit are substantially similar in their potential fire-causing failure modes.

15.     The PTC heating element included in various styles, sizes, models and configurations of Sunbeam electric blankets, throws, and mattress covers is substantially similar in its electrical function and design.

16.     The potential fire-causing failure modes the PTC heating element included in various styles, sizes, models and configurations of Sunbeam electric blankets, throws, and mattress covers is substantially similar.

17.     One of the purposes of including a safety circuit in Sunbeam PTC electric blankets is to reduce the risk of fires from electrical faults that may occur in the PTC heating element during the use of these products.

18.     Plaintiff Kathena Clemons' electric blanket had a control and terminal block which were manufactured in China.

19.     Plaintiff Kathena Clemons' electric blanket was substantially similar to other Sunbeam electric blankets using Sunbeam PTC heating element and the Circuit 104 safety circuit.

20.     Plaintiff Kathena Clemons' electric blanket was substantially similar in its potential electrical failure modes, potential electrical malfunctions and potential electrical fire hazards to other Sunbeam electric blankets using Sunbeam PTC heating element and the Circuit 104 safety circuit.

21.     The Sunbeam PTC heating element electric blankets, throws and mattress pads are consumer products, and subject to regulation and reporting requirements to the United States Consumer Product Safety Commission (hereinafter "CPSC") under the Consumer Product Safety Act (hereinafter "CPSA").

**The Incident of March 27, 2011**

22. On or about February, 2007, Plaintiff Kathena Clemons purchased a Sunbeam electric blanket at Walmart, in the State of Illinois.

23. On or about March 27, 2011, the Sunbeam electric blanket of Plaintiff Kathena Clemons suddenly and without warning caught fire while being used in her residence located in Pulaski County, Illinois.

24. The Sunbeam electric blanket of Plaintiff Kathena Clemons suddenly and without warning caught fire while being used in a reasonable and foreseeable way.

25. At the time of the incident described herein, Plaintiff Kathena Clemons was using the Sunbeam electric blanket in a manner that was or should have been reasonably expected or anticipated by Sunbeam that it would be used by a reasonable consumer.

26. As a direct and proximate result of the incident, Plaintiff Kathena Clemons suffered burns to her left knee.

27. As a direct and proximate result of the incident and resulting fire, personal property of Plaintiff Kathena Clemons was damaged or destroyed.

**Manufacturer and Importer Conduct**

28. The Plaintiff's Sunbeam Circuit 104 electric blanket was defective in design in that the safety circuitry did not perform as intended to prevent the product from catching fire when certain known and anticipated events or conditions occurred within the PTC heating element during the reasonable and expected use of the product.

29. Defendant Sunbeam has received and maintains claims files, warranty returns, consumer complaints, databases, documents, and other information putting it on notice, if not proving, that since their introduction into the market in the early to mid 1980s, Sunbeam PTC heating element electric blankets designed by it have been causing fires in substantial numbers in a manner substantially similar to the failure of the decedent's electric blanket as described herein.

30.     Defendant Sunbeam has received and maintains claims files, warranty returns, consumer complaints, databases, documents, and other information putting it on notice, if not proving, that since their introduction into the market in the year 2000, Sunbeam PTC heating element electric blankets designed by it which contain Circuit 104 have been causing fires in substantial numbers in a manner substantially similar to the failure of the decedent's electric blanket as described herein.

31.     In spite of the notice and information it has received, and knowledge of the fire hazard of these electric blankets, and the accompanying hazard of serious injury and death, as well as the hazard of fires and property damage, Defendant Sunbeam nonetheless has made the corporate decision to continue manufacturing, importing, and distributing to consumers in the State of Illinois, including Plaintiff Kathena Clemons, these same defective, misbranded and adulterated products.

32.     In spite of the notice and information it has received, and knowledge of the fire hazard of these electric blankets, and the accompanying hazard of serious injury to consumers, as well as the hazard of fires and property damage, Defendant Sunbeam nonetheless has made the corporate decision not to stop the sale of these defective, misbranded and adulterated products to consumers in the State of Illinois, including Plaintiff Kathena Clemons.

33.     In spite of the notice and information it has received, and knowledge of the fire hazard of these electric blankets, and the accompanying hazard of serious injury to consumers, as well as the hazard of fires and property damage, Defendant Sunbeam nonetheless has made the corporate decision not to warn consumers in the State of Illinois, including Plaintiff Kathena Clemons, that these defective, misbranded and adulterated Sunbeam electric blankets, with the same design, manufacture and labeling defects, may suddenly and unexpectedly fail during reasonable and expected use of the product, presenting a hazard of fires and the accompanying hazard of serious injury and death to consumers, as well as a hazard of property damage, when being used by consumers in a manner that is or should be reasonably expected and anticipated by Sunbeam.

34. In spite of the notice and knowledge of the facts set forth above, prior to the importation, distribution and sale of the Clemons electric blanket, Defendant Sunbeam nonetheless made the corporate decision not to recall these defective, misbranded and adulterated products which had been distributed to retailers, but had not yet been sold and distributed to consumers in the State of Illinois, such as Plaintiff Kathena Clemons.

35. In spite of the notice and knowledge of the facts set forth above, subsequent to the distribution and sale of the Clemons electric blanket, Defendant Sunbeam made the corporate decision not to recall these defective, misbranded and adulterated products which had been distributed and sold to consumers in the State of Illinois, such as Plaintiff Kathena Clemons.

36. The conduct of Sunbeam, as set forth herein, was negligent.

37. The actions of Defendant Sunbeam, as set forth herein, were willful, wanton, malicious, oppressive, fraudulent, reckless, and with conscious disregard for the safety of the consuming public, including Plaintiff Kathena Clemons.

38. The conduct of Sunbeam, as set forth herein, was with malice in that Sunbeam's conduct was carried on by the defendant Sunbeam with a willful and knowing disregard of the rights or safety of others.

39. The conduct of Sunbeam, as set forth herein, was oppressive in that Sunbeam's conduct subjected Plaintiff Kathena Clemons to cruel and unjust hardship in knowing disregard of her rights.

40. The conduct of Sunbeam, as set forth herein, was fraudulent in that Sunbeam engaged in intentional misrepresentation, deceit, or concealment of material facts known to Sunbeam with the intention on the part of the Sunbeam of continuing to import, manufacture, distribute, and leave on the market a dangerous product that harmed, and thereby deprived Plaintiff Kathena Clemons of property or legal rights or otherwise caused the injuries of Kathena Clemons.

41. As a direct and proximate result of Sunbeam's negligence, Plaintiff Kathena

Clemons was injured, and Plaintiff suffered the byrn injuries as otherwise claimed herein.

42. As a direct and proximate result of Sunbeam's defective and dangerous product Kathena Clemons suffered the injuries as otherwise claimed herein.

43. As a direct and proximate result of Sunbeam's malice, oppression and fraud, as well as its willful, wanton, reckless conduct, and its knowing disregard for the safety of the consuming public, Plaintiff Kathena Clemons suffered the injuries and damages as otherwise claimed herein.

## Consumer Product Safety Act

44. Section 15(b) of the Consumer Product Safety Act (CPSA), 15 U.S.C. 2064(b), imposes specific reporting obligations on manufacturers, importers, and distributors, of consumer products distributed in commerce, such as Sunbeam, to provide information about certain incidents involving their products to the United States Consumer Product Safety Commission (CPSC).

45. A manufacturer, importer, or distributor, such as Sunbeam, that obtains information that reasonably supports the conclusion that such a product:  (1) Fails to comply with an applicable consumer product safety rule or with a voluntary consumer product safety standard upon which the CPSC has relied under section 9 of the CPSA, (2) Contains a defect that could create a substantial product hazard as defined in Section 15(a)(2) of the CPSA, 15 U.S.C. 2064(a)(2), or (3) Creates an unreasonable risk of serious injury or death must immediately inform the Commission unless the firm has actual knowledge that the Commission has been adequately informed of the failure to comply, defect, or risk.

46. The purpose of reporting is to provide the Commission with the information it needs to determine whether remedial action is necessary to protect the public.

47. To accomplish this purpose, Section 15(b) contemplates that the Commission receive, at the earliest time possible, all available information that can assist it in evaluating potential product hazards.

48. Pursuant to 16 CFR 1115, a "defect" is defined as a fault, flaw, or irregularity

that causes weakness, failure, or inadequacy in form or function.

49. Pursuant to 16 CFR 1115, a consumer product may be defective even if it is designed, manufactured, and marketed exactly as intended.

50. Pursuant to 16 CFR 1115, a manufacturer or an importer should report to the CPSC if in doubt as to whether a defect exists.

51. Pursuant to 16 CFR 1115, the requirement that manufacturer or importer of a product report to the CPSC when it obtains information which reasonably supports the conclusion that its product creates an unreasonable risk of serious injury or death is intended to require manufacturers and importers to report even when no final determination of the risk is possible.

52. Pursuant to 16 CFR 1115, the manufacturer or importer is to report to the CPSC if a reasonable person could conclude given the information available that a product creates an unreasonable risk of serious injury or death.

53. The purpose of reporting is to provide the Commission with the information it needs to determine whether remedial action is necessary to protect the public.

54. To accomplish this purpose, Section 15(b) contemplates that the Commission receive, at the earliest time possible, all available information that can assist it in evaluating potential product hazards.

55. In deciding whether to report a potential product defect, the law does _not_ limit the obligation of a manufacturer, importer, or distributor, such as Sunbeam, to report events only where it has finally determined that a product in fact contains a defect that creates a substantial product hazard or has pinpointed the exact cause of such a defect.

56. A manufacturer, importer, or distributor must report to the CPSC if it obtains information which reasonably supports the conclusion that a product it manufactures and/or distributes contains a defect which could create such a hazard or that the product creates an unreasonable risk of serious injury or death.

57. Upon information and belief, in spite of the knowledge of the facts set forth

above, prior to the distribution and sale of the Sunbeam electric blanket to Plaintiff Kathena Clemons, Sunbeam made the corporate decision not to fully report to the United States Consumer Product Safety Commission, pursuant to Section 15(b) of the Consumer Product Safety Act, 15 U.S.C. § 2064(b), and 16 C.F.R. § 1115, potential product hazards related to the other Sunbeam PTC electric blankets designed by it, imported by it from China, and distributed by it, using Sunbeam's PTC heating element technology, including that Sunbeam had received notice from scores of consumers that these products allegedly were the cause of serious personal injury, death and property damage, and were defective.

58.     Upon information and belief, in spite of the knowledge of the facts set forth above, prior to the sale of the Sunbeam electric blanket to Plaintiff Kathena Clemons, Sunbeam made the corporate decision not to fully report to the United States Consumer Product Safety Commission, pursuant to Section 15(b) of the Consumer Product Safety Act, 15 U.S.C. § 2064(b), and 16 C.F.R. § 1115, potential product hazards related to the other Sunbeam PTC electric blankets designed by it, imported by it from China, and distributed by it, using Sunbeam's Circuit 104 safety circuit technology, including that Sunbeam had received notice from scores of consumers that these products allegedly were the cause of serious personal injury, death and property damage, and were defective.

59.     Sunbeam's failure to properly report to the CPSC reportable events allowed it to conceal these reportable events, and thereby avoid sanctions, corrective actions or other consequences.

### **Willful, Wanton and Malicious Conduct**

60.     Defendant Sunbeam's conduct was aggravated and far more egregious than mere negligence and included gross negligence as well as knowing, willful, wanton, malicious, reckless, and fraudulent conduct with oppression and utter disregard for the safety of the consuming public, in that despite what it knew or should have known of the fire risks associated with its PTC wired electric bedding products, failed to recall those electrically heated bedding products already sold, failed to provide post-sale warnings to purchasers of said electrically

9

heated bedding products, failed to retrofit the product with adequate safety devices to prevent damages such as occurred to the Plaintiff herein.

61. The aggravated conduct of Defendant Sunbeam was so extreme and outrageous that it evidenced indifference to and reckless disregard for the life, health and safety of the Plaintiff, constituted indifference to and reckless disregard for the Plaintiff and their property, placed the Plaintiff's health, life, safety, and property at risk and within a zone of danger, caused severe emotional distress to the Plaintiff and further constituted unconscionable, willful, and wanton conduct on the part of Defendant Sunbeam which was a cause of injury, damage and loss to the Plaintiff.

62. The actions of Sunbeam, as set forth herein, were motivated by profit for the corporation, outweighing the interests of the safety of the consuming public.

## COUNT I: STRICT LIABILITY

63. Plaintiff incorporates by reference all of the previous allegations of this Complaint as if stated herein.

64. The Sunbeam electric blanket and control had a defect that caused the injuries to plaintiff Kathena Clemons.

65. Plaintiff Kathena Clemons was injured, damaged and/or harmed by a product designed, manufactured, and distributed by Defendant Sunbeam that contained a manufacturing defect, and/or a design defect, and/or did not include sufficient instructions or warning of potential safety hazards.

66. The Sunbeam electric blanket owned and used by Plaintiff was defectively designed, manufactured, constructed, assembled, tested, inspected, and certain components of it, i.e. the control, were imported in a defective condition by Defendant Sunbeam from China, acting by and through its agents, servants, and employees in the United States and in China.

67. The Sunbeam electric blanket owned and used by Plaintiff was defective when it left the hands of Defendant Sunbeam and was placed into the stream of commerce.

68. The Sunbeam electric blanket owned and used by Plaintiff was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

69. Defendant Sunbeam is strictly liable to the Plaintiff for the injuries and damages caused by this product, as alleged in this complaint, because:

(a) The defects in the Sunbeam electric blanket, as described herein, were a substantial factor in proximately causing the fire that is the subject of this Complaint, and the resulting damages;

(b) At the time of the incident that is the subject of this Complaint, the Sunbeam electric blanket of the Plaintiff was being used in the manner normally intended;

(c) At the time of the incident that is the subject of this Complaint, the Plaintiff could not, by the exercise of reasonable care, have discovered the defects in this Sunbeam electric blanket, or perceived their danger; and

(d) At the time of the incident that is the subject of this Complaint, the Plaintiff could not, by the exercise of reasonable care, have avoided the fire in this product.

70. The Sunbeam electric blanket owned and used by Plaintiff was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer, in that:

(a) The product may suddenly and unexpectedly catch fire when being used in a responsible and foreseeable manner;

(b) The product may suddenly and unexpectedly catch fire when being used in accordance with its instructions;

(c) The product did not have adequate safety circuitry to prevent it from catching fire in the event of all known and expected events that may occur within its PTC heating element during reasonable and expected use of the product;

(d) The product did not have adequate safety circuitry to prevent it from

11

catching fire in the event of all known and expected events that may occur within its control during reasonable and expected use of the product;

(e) The product lacked adequate warnings that the product may suddenly and unexpectedly catch fire during reasonable and expected use of the product;

(f) The construction of the control is such that during reasonable and expected use of the product, certain components of the control may overheat and cause a fire;

(g) The control did not meet industry or UL standards; and

(h) Sunbeam did not report to the CPSC reportable events involving substantially similar electric blankets, as required by law, thereby circumventing the oversight of that agency to protect consumers like Plaintiff Kathena Clemons from defective or hazardous products.

71. The defects in the design of the Plaintiff's Circuit 104 Sunbeam electric blanket include, but are not limited to, the following:

(a) The product did not have adequate safety circuitry to prevent it from catching fire in the event of all known and expected events that may occur within its PTC heating element during reasonable and expected use of the product;

(b) The product did not have adequate safety circuitry to prevent it from catching fire in the event of all known and expected events that may occur within its control during reasonable and expected use of the product;

(c) Inadequate labeling and warnings;

(d) The product lacked adequate warnings that the product may suddenly and unexpectedly catch fire during reasonable and expected use of the product;

(e) The construction of the control is such that during reasonable and expected use of the product, certain components of the control may overheat and cause a fire; and

(f) The control did not meet industry or UL standards.

72. The defects in the manufacture of the Plaintiff's Circuit 104 Sunbeam electric blanket include, but are not limited to, the following:

  (a) Failure to manufacture to the PTC wire to their design standards;

  (b) Failure to manufacture to the control to their design standards;

  (c) Failure to manufacture the control to industry standards; and

  (d) Failure to manufacture the control to UL Standards.

73. The Sunbeam electric blanket that was being used by Plaintiff was in the same or substantially the same condition as it was when it was manufactured, imported, and distributed by Sunbeam, and had not been changed or altered or damaged in any material way by the Plaintiff.

74. Plaintiff used the Sunbeam electric blanket in a reasonably foreseeable way and/or in a way that Sunbeam should have reasonably expected it to be used by consumers.

75. As a direct and proximate result of Sunbeam's conduct and the defective condition of the Sunbeam electric blanket, Kathena Clemons suffered the injuries and damages set forth herein.

76. As a direct and proximate result of Sunbeam's conduct and the defective condition of the Sunbeam electric blanket, Kathena Clemons suffered severe burns and other injuries not fully known at this time; non-economic damages, including, but not limited to, past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, anxiety or humiliation; and economic damages including, but not limited to, loss of future earning capacity and income, past and future medical care and treatment; and personal property damage.

WHEREFORE, Plaintiff Kathena Clemons prays for judgment against Defendant as herein set forth.

## COUNT II: NEGLIGENCE

77. Plaintiff Kathena Clemons incorporates by reference all of the previous

allegations of this Complaint as if stated herein.

78. Defendant Sunbeam deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed.

79. Defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity.

80. Sunbeam owed a duty to Plaintiff Kathena Clemons to exercise reasonable care in the design and manufacture of the electric blanket, and a duty to protect Kathena Clemons from foreseeable and unreasonable risks of injury, damage, and harm.

81. Sunbeam negligently designed and/or manufactured the electric blankets so as to make them not reasonably safe for their intended use, not reasonably safe for their reasonably expected use, and not reasonably safe for their known use by consumers.

82. Sunbeam negligently failed to adequately label the electric blanket, and failed to adequately warn, inform, instruct and apprise the consuming public in general, and Kathena Clemons in particular as a user of the electric blanket, of the known danger of fires in these blankets, as well as the defective and unsafe condition of these electric blankets.

83. As a direct and proximate result of the negligence of and breach of duties by Defendant Sunbeam, Plaintiff Kathena Clemons was injured and damaged as set forth herein.

WHEREFORE, Plaintiff prays for judgment against Defendant as herein set forth.

## COUNT III: BREACH OF EXPRESS WARRANTY

84. Plaintiff Kathena Clemons incorporates by reference all of the previous allegations of this Complaint as if stated herein.

85. Sunbeam expressly warranted that the subject electric blankets were free from defects in material and workmanship, that they complied with Underwriters Laboratories (hereinafter "UL") safety standards, and they complied with all applicable safety and health requirements set by state and federal agencies.

86. Contrary to these express warranties, Sunbeam designed, constructed,

manufactured, assembled, inspected, imported, and placed upon the market and into the stream of commerce the subject electric blankets, and their controls made by or on behalf of Sunbeam in China, in a defective condition, misbranded, adulterated, and not in compliance with relevant safety standards, including in particular certain standards promulgated by Underwriters Laboratories.

87. As a direct and proximate result of Sunbeam's breach of its express warranties, plaintiff Kathena Clemons suffered the injuries and damages as set forth herein.

WHEREFORE, Plaintiff prays for judgment against Defendant as herein set forth.

## COUNT IV: BREACH OF IMPLIED WARRANTY

88. Plaintiff Kathena Clemons incorporates by reference all of the previous allegatiuons of this Complaint as if stated herein.

89. As alleged herein, Plaintiff purchased the Sunbeam electric blanket. Sunbeam impliedly warranted that the blanket was reasonably fit for its reasonably expected and intended use.

90. Contrary to this implied warranty, Sunbeam designed, manufactured, and placed upon the market and into the stream of commerce the electric blanket in a defective condition and not in compliance with its implied warranty of fitness for its reasonably expected and intended uses.

91. As a direct and proximate result of Sunbeam's breach of its implied warranty, Plaintiff suffered the injuries and damaged as set forth herein.

WHEREFORE, Plaintiff Kathena Clemons prays for judgment against Defendant as herein set forth.

## PRAYER FOR RELIEF

As a direct and proximate result of the conduct of the Defendant Sunbeam, as set forth above, the following injuries and damages have occurred to and been sustained by the Plaintiff Kathena Clemons:

    (a)    Non-economic damages including, but not limited to, past and future physical pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, anxiety or humiliation;

    (b)    Economic damages including, but not limited to, loss of future earning capacity and income, past and future medical care and treatment and rehabilitation;

    (c)    The value of her personal possessions that were lost and destroyed;

    (d)    All other direct and consequential losses and damages as may be allowed by law as a direct and proximate result of her injuries;

    (e)    Prejudgment and post-judgment interest on her damages; and

    (f)    Punitive damages.

WHEREFORE, Plaintiff Kathena Clemons suffered the injuries and damages as set forth herein.prays that she be awarded all economic and non-economic damages and punitive damages from Defendant Sunbeam Products, Inc., as allowed under applicable laws, in an amount in excess of the jurisdictional amount of $75,000, the exact amount of which has yet to be ascertained, for the direct and consequential damages, injuries, expenses, and losses she has suffered; that Plaintiff be awarded pre-judgment and post-judgment interest as allowed under applicable laws; for costs of suit herein; and for such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 28, 2012

Respectfully Submitted,

**JOHN GEHLHAUSEN, P.C.**

By: s/ George E. McLaughlin
George E. McLaughlin. Esq.
22488 E. Polk Drive
Aurura, CO 80016
Telephone: (303) 690-8197
Facsimile: (719) 336-9617
gmclaughlin@tractorlaw.com

**ATTORNEY FOR PLAINTIFF**